UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

DAVID HICKS,                           )
                                       )
                    Plaintiff,         )
                                       )
v.                                     )    No.  4:24 CV 1453 RWS
                                       )
FRANK BISIGNANO,[1]                    )
Commissioner of Social Security,       )
                                       )
                    Defendant.         )

## MEMORANDUM AND ORDER

Plaintiff David Hicks brings this action pursuant to 42 U.S.C. §§ 405(g) seeking judicial review of the Commissioner's decision denying his application for disability benefits under the Social Security Disability Insurance Program (SSDI), Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for benefits under the Supplemental Security Income Program (SSI), Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f.  For the reasons set forth below, I will affirm the decision of the Commissioner.

---

[1] Frank Bisignano became the Commissioner of Social Security on May 6, 2025.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano should be substituted for Martin O'Malley as the defendant in this suit.

## Procedural History

Plaintiff David Hicks was born on April 14, 1986.  (Tr. 499.)  He is currently 39 years old.  Hicks completed high school.  (Tr. 575.)  The alleged onset date of his disability is September 1, 2019.  (Tr. 501.)  In the several years before he applied for disability benefits, Hicks worked as a laborer, cashier/assistant manager, and dishwasher.  (Tr. 862, 872.)  His final employment, lasting for two years, was that of a laborer through a temp agency.  (Tr. 872.)  That position ended in December 2018.  (Tr. 576, 872.)

On December 19, 2016, Hicks protectively filed a Title II application for a period of disability and disability insurance and a Title XVI application for supplemental security income.  (Tr. 499.)  He alleged his disability began on September 1, 2019.  (Tr. 499, 850)  Hicks's applications were initially denied on May 27, 2020.  (Tr. 635.)  The applications were denied again upon reconsideration on December 21, 2020.  (Tr. 660.)  On February 12, 2021, Hicks filed a request for a hearing before an Administrative Law Judge (ALJ).  (Tr. 706-707.)  The ALJ held an in-person hearing on September 8, 2023, in Creve Coeur, Missouri.  (Tr. 570-598, 599-605).  An impartial vocational expert (VE) participated via telephone.

In his Disability Report, completed on March 24, 2020, Hicks asserted the following conditions that limit his ability to work: degenerative changes in both shoulders; cervical spine pain; scoliosis; low back pain; degenerative hip changes;

headaches; hand pain; bipolar; ADHD; and anxiety.  (Tr. 854.)  In his Function Reports, completed on December 14, 2019 and July 3, 2020, Hicks asserted that the following conditions, among others, limit his ability to work: he sleeps 1-2 hours at most because of his pain; he has numbness and tingling in his arms and legs; he has difficulty doing household chores like cooking and cleaning because of his pain and mental health issues; he suffers from body aches and dizziness; he can only walk for 20 minutes before needing to stop and rest; he does not handle stress well; he has trouble focusing, moodiness, and depression because of his ADHD and bipolar disorder; and he sometimes needs to be reminded to do paperwork. (Tr. 834-849, 897-911.).

At the hearing before the ALJ, Hicks's counsel stated that Hicks's impairments include a combination of anxiety, depression, and bipolar disorder, along with migraines, cervical degeneration, cervical radiculopathy, and bilateral carpal tunnel syndrome.  His counsel further noted that Hicks had left shoulder surgery in October 2020, was going to see a doctor for his right shoulder, and had ongoing issues after a right ankle fracture in September 2022.  (Tr. 573.)  Hicks testified that his difficulty with his hands keep him from working.  (Tr. 577.)  He testified that he could have something in his hands and it will drop on its own, and he will not realize that he dropped it.  (*Id.*)  He also testified that he trips a lot because his bones have deteriorated, his hips are "not all the way in place," he has

a lot of back problems and neck problems, he has migraines, he has asthma, he sometimes needs to be reminded to bathe and take his medications, he wears braces on his wrists, he uses a walking stick, and he has mental health issues, including depression.  (Tr. 578-579, 581, 588)  When asked by the ALJ about his medications, Hicks testified that he was "doing good" with the medication for his depression.  (Tr. 578.)  He testified that he had both carpal tunnels released, and that his hands were healing, but that he could "not really put pressure down" on his palms because of the pain.  (*Id.*)

On September 21, 2023, the ALJ issued a decision finding that Hicks was not disabled and that he could perform a reduced range of light-duty, unskilled occupations.  (Tr. 513.)  On September 17, 2024, the Appeals Council denied Hicks's request for review.  (Tr. 1.)  The ALJ's decision is now the final decision of the Commissioner.  42 U.S.C. §§ 405(g).

In this action for judicial review, Hicks contends that the ALJ erred in failing to analyze the supportability and consistency of medical opinions as required by 20 C.F.R. § 404.1520C.  (ECF # 20 at 3.)  Hicks asserts that the ALJ erred in relying on outdated, non-examining state agency opinions, the ALJ failed to properly evaluate the credibility of Hicks's subjective complaints, and the ALJ's RFC determination is not supported by substantial evidence.  (*Id.* at 4-12.)  Hicks now requests that I reverse the Commissioner's final decision and award benefits, or, in

4

the alternative, that I reverse the Commissioner's decision and remand for further

evaluation. (*Id.* at 12.) For the reasons that follow, I will deny Hicks's request.

## Medical Records and Other Evidence Before the ALJ

With respect to the medical records and other evidence of record, I have

considered Hicks's Statement of Uncontroverted Material Facts (ECF # 20-1) and

the Commissioner's Response to Plaintiff's Statement of Uncontroverted Material

Facts (ECF # 27-1). Additional facts will be discussed as needed to address the

parties' arguments.

## Discussion

### A. Legal Standard

To be eligible for disability insurance benefits under the Social Security Act, a

plaintiff must prove that she is disabled. *Pearsall v. Massanari*, 274 F.3d 1211,

1217 (8th Cir. 2001); *Baker v. Secretary of Health & Human Servs.*, 955 F.2d 552,

555 (8th Cir. 1992). The Social Security Act defines disability as the "inability to

engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than 12

months." 42 U.S.C. § 423(d)(1)(A). An individual will be declared disabled "only

if [her] physical or mental impairment or impairments are of such severity that

[she] is not only unable to do his previous work but cannot, considering his age,

education, and work experience, engage in any other kind of substantial gainful

work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is disabled, the Commissioner engages in a

five-step evaluation process.  *See* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482

U.S. 137, 140-42 (1987).  The Commissioner begins by deciding whether the

claimant is engaged in substantial gainful activity (SGA).[2]  If not, the disability

analysis proceeds to the second step.  In this step the Commissioner decides

whether the claimant has a "severe" impairment or combination of impairments,

meaning that which significantly limits his ability to do basic work activities.  If

the claimant's impairment(s) is not severe, then she is not disabled and the analysis

ends.  If the claimant has a severe impairment, the Commissioner then proceeds to

the third step and determines whether claimant's impairment(s) meets or equals

one of the impairments listed in 20 C.F.R., Part 404, Subpart P, Appendix 1.  If

claimant's impairment(s) is equivalent to one of the listed impairments, she is

conclusively disabled.  If the impairment is not equivalent to a listed impairment,

then the Commissioner proceeds to the fourth step to determine whether the

---

[2] "Substantial gainful activity (SGA) is defined as work activity that is both substantial and gainful.  'Substantial work activity' is work activity that involves doing significant physical or mental activities (20 CFR 404.1572(a) and 416.972(a)).  'Gainful work activity' is work that is usually done for pay or profit, whether or not a profit is realized (20 CFR 404.1572(b) and 416.972(b)).  Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that he has demonstrated the ability to engage in SGA (20 CFR 404.1574, 404.1575, 416.974, and 416.975).  If an individual engages in SGA, he is not disabled regardless of how severe his physical or mental impairments are and regardless of his age, education, and work experience."  (Tr. 500.)

claimant can perform her past relevant work.[3]  If so, the claimant is not disabled.
If not, at the last step the Commissioner evaluates various factors to determine
whether the claimant is capable of performing any other work in the economy.  If
not, the claimant is declared disabled and becomes entitled to disability benefits.

I must affirm the Commissioner's decision if it is supported by substantial
evidence on the record as a whole.  42 U.S.C. § 405(g); *Richardson v. Perales*, 402
U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002).
Substantial evidence is less than a preponderance but enough that a reasonable
person would find it adequate to support the conclusion.  *Johnson v. Apfel*, 240
F.3d 1145, 1147 (8th Cir. 2001).  "[Substantial evidence] means – and means only
– such relevant evidence as a reasonable mind might accept as adequate to support
a conclusion."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (cleaned up).
Determining whether there is substantial evidence requires scrutinizing analysis.
*Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007).

I must consider evidence that supports the Commissioner's decision as well
as any evidence that fairly detracts from the decision.  *McNamara v. Astrue*, 590
F.3d 607, 610 (8th Cir. 2010).  If, after reviewing the entire record, it is possible to
draw two inconsistent positions and the Commissioner has adopted one of those

---

[3] "The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the claimant to learn to do the job and have been SGA (20 CFR 404.1560(b), 404.1565, 416.960(b), and 416.965)."  (Tr. 501.)

positions, I must affirm the Commissioner's decision. *Anderson v. Astrue*, 696

F.3d 790, 793 (8th Cir. 2012). I may not reverse the Commissioner's decision

merely because substantial evidence could also support a contrary outcome.

*McNamara*, 590 F.3d at 610.

When evaluating medical opinions and prior administrative medical

findings, the ALJ will consider various factors, the "most important factors" being

supportability and consistency. 20 CFR § 404.1520c(a). The ALJ must "articulate

in his determination or decision how persuasive he find[s] all of the medical

opinions and all of the prior administrative medical findings in your case record."

*Id.* at § 404.1520c(b).

When evaluating evidence of pain or other subjective complaints, the ALJ is

never free to ignore the subjective testimony of the claimant, even if it is

uncorroborated by objective medical evidence. *Basinger v. Heckler*, 725 F.2d

1166, 1169 (8th Cir. 1984). The ALJ may, however, disbelieve a claimant's

subjective complaints when they are inconsistent with the record as a whole. *See*

*e.g.*, *Battles v. Sullivan*, 902 F.2d 657, 660 (8th Cir. 1990). In considering the

subjective complaints, the ALJ is required to consider the factors set out by *Polaski*

*v. Heckler*, 739 F.2d 1320 (8th Cir. 1984), which include:

> [The] claimant's prior work record, and observations by third
> parties and treating and examining physicians relating to such
> matters as: (1) the claimant's daily activities; (2) the duration,
> frequency, and intensity of the pain; (3) precipitating and

8

aggravating factors; (4) dosage, effectiveness and side effects of medication; and (5) functional restrictions.

*Id.* at 1322.[4]  When an ALJ explicitly finds that the claimant's testimony is not credible and gives good reasons for the findings, the court will usually defer to the ALJ's finding.  *Casey v. Astrue*, 503 F.3d 687, 696 (8th Cir. 2007).  However, the ALJ retains the responsibility of developing a full and fair record in the non-adversarial administrative proceeding.  *Hildebrand v. Barnhart*, 302 F.3d 836, 838 (8th Cir. 2002).

## B.  ALJ's Decision

In her written decision, the ALJ found that Hicks had not engaged in substantial gainful activity since September 1, 2019, the alleged onset of his disability. (Tr. 501.)  The ALJ found that Hicks had the following severe impairments: residuals of left shoulder superior labrum; anterior to posterior (SLAP) repair; lumbar radiculopathy and bilateral carpal tunnel syndrome; residuals right ankle fracture; intermittent asthma; bipolar disorder, major depressive disorder; anxiety; and history of attention deficit hyperactivity disorder (ADHD).  (Tr. 502.)  The ALJ determined that Hicks's impairments or combination of impairments did not meet

---

[4] This was once referred to as a credibility determination, but the agency has now eliminated use of the term "credibility" to clarify that subjective symptom evaluation is not an examination of an individual's character. However, the analysis remains largely the same, so the Court's use of the term credibility refers to the ALJ's evaluation of whether a claimant's "statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and other evidence of record."  *See* SSR 16-3p, 2017 WL 5180304, at *8 (Oct. 25, 2017); 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3); *Lawrence v. Saul*, 970 F.3d 989, 995 n.6 (8th Cir. 2020) (noting that SSR 16-3p "largely changes terminology rather than the substantive analysis to be applied" when evaluating a claimant's subjective complaints).

or medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 502.) The ALJ found Hicks to have the residual functional capacity (RFC) to perform light work as defined in 20 CFR § 404.1567(b) with the following limitations:

> [h]e can occasionally climb ramps and stairs; should avoid climbing ladders, ropes, or scaffolds; occasionally crawl; frequently handle and finger with bilateral upper extremities; avoid exposure to concentrated fumes, odors, gases, dust, and poor ventilation; occasionally lift overhead with the bilateral upper extremities; is able to complete simple, routine tasks with minimal changes in job duties and setting; should avoid fast-paced production work, for example avoid work that requires hourly quotas; and he is able to occasionally interact with supervisors, co-workers, and the general public.

(Tr. 506.) The ALJ determined that Hicks is unable to perform any past relevant work. (Tr. 512). The ALJ consulted a vocational expert (VE) to assess whether jobs within Hicks's RFC existed in significant numbers in the national economy. (Tr. 513.) The VE identified the jobs of merchandise marker (136,791 positions); routing clerk (117,393 positions); and mail clerk (11,324 positions). (Tr. 513.) As a result, the ALJ found that Hicks was not disabled within the meaning of the Social Security Act from September 1, 2019, through the date of the ALJ's decision. (*Id.*)

### C. Hicks's Objections to the ALJ's Decision

Hicks contends that the ALJ failed to analyze the supportability and consistency of medical opinions as required by 20 C.F.R. § 404.1520C. He asserts that the ALJ

deemed the opinions of non-examining state agency physicians "persuasive" without evaluating whether those opinions were supported by relevant objective evidence or were consistent with the entirety of the medical record.  He further argues that the ALJ disregarded Hicks's subjective complaints of pain.  Finally, he claims that the ALJ's RFC determination is not supported by substantial evidence.

### *The ALJ properly analyzed the supportability and consistency of medical opinions.*

Because Hicks filed his applications for DIB and SSI after March 27, 2017, new regulations required the ALJ to evaluate each medical opinion and prior administrative medical finding and (1) articulate her consideration of its persuasiveness, (2) articulate her consideration of the supportability factor, and (3) articulate her consideration of the consistency factor.  *See* 20 C.F.R. § 404.1520c(b), 416.920c(b).

Regarding the supportability factor, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical findings will be." *See, e.g.*, *H.D. by Maslo v. Kijakazi*, No. 4:20-CV-01532-SRC, 2022 WL 2904143 (E.D. Mo. July 22, 2022) (quoting 20 C.F.R. § 416.920c(1)).  In evaluating consistency, "[t]he more consistent a medical opinion(s) or prior administrative

medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical findings will be." *Id.* (quoting 20 C.F.R. § 416.920c(2)).

On May 27, 2020, state agency medical consultant Donna McCall, D.O., reviewed all of the available evidence regarding Hicks's condition and prepared a physical residual functional capacity assessment. Dr. McCall determined that Hicks had the ability to "lift, carry, push or pull 20 pounds occasionally and 10 pounds frequently; stand and/or walk for about 6 hours in an 8-hour workday; sit for about 6 hours in an 8-hour workday; and occasionally crawl and climb ladders, ropes, or scaffolds." (Tr. 511, 630-632.) Dr. McCall concluded that Hicks's "condition is not severe enough to keep [him] from working." (Tr. 635.) On December 18, 2020, Dr. Harry Cole, M.D., affirmed Dr. McCall's assessment. (Tr. 654.) The ALJ found the assessments of Drs. McCall and Cole persuasive because:

> while they are non-examining and have treatment relationship with the claimant, they are familiar with Social Security rules and regulations, and their conclusions are both well supported by a detailed narrative analysis encompassing all evidence available at the time of their review and consistent with the claimant's positive findings and clinical signs.

(Tr. 511.)

Hicks argues that the ALJ did not consider whether Drs. McCall and Cole's opinions were based on "objective imaging, physical exam findings, or

longitudinal treatment data" (ECF # 20 at 3).  In support of his position, Hicks cites

the following medical evidence:

- Left shoulder MRI findings from February 24, 2020 showing moderate supraspinatus tendinosis with interstitial tearing, labral tearing, and chondral-labral separation (Tr. 1028);
- EMG testing on July 27, 2020, which confirmed left C5-6 radiculopathy and bilateral carpal tunnel syndrome (Tr. 1308);
- Cervical spine MRI from June 25, 2020 showing multi-level degenerative changes, moderate to severe left foraminal stenosis at C3-4, and central canal narrowing at multiple levels (Tr. 1152);
- Left shoulder arthroscopic labral repair surgery performed on October 1, 2020 (Tr. 1327-47);
- Post-operative evidence of continued left shoulder deficits, including limited ROM and persistent pain requiring further orthopedic follow-up (Tr. 2044, 2018-20, 1929-31)

(ECF # 20 at 3-4).  When evaluating the supportability factor, the ALJ had Drs.

McCall and Cole's reports available to her, including the objective medical

evidence that formed the basis of their opinions.  (Tr. 511.)  Dr. Cole's assessment

was based on precisely the medical records that Hicks claims were not reviewed by

or accessible to him.[5]  (Tr. 654.)  Dr. Cole's assessment was also based on post-

operative evidence of "well-healing surgical sites" and "increasing ROM with

ongoing PT" from Hicks's left shoulder repair follow-ups in October and

December 2020.  (*Id.*)  The ALJ acknowledged that Drs. McCall and Cole did not

---

[5] Dr. Cole's report lists the objective medical evidence upon which he based his assessment, including: the left shoulder MRI "show[ing] moderate supraspinatus tendinosis with small partial interstitial tear, superior labral tear…and minimal chondral labral separation posteriorly"; the EMG testing on July 27, 2020 showing "left C5-6 radiculopathy with ongoing denervation" and bilateral carpal tunnel syndrome; the cervical spine MRI from June 25, 2020 showing "disc bulge at C4-5 flattening the thecal sac" and "[m]oderate foraminal stenosis"; and the October 1, 2020 left shoulder arthroscopy.  (Tr. 654.)

examine Hicks or have a treatment relationship with him. (*Id.*) But the ALJ ultimately found their opinions were "both well supported by a detailed narrative analysis and encompassed all evidence available to them *at the time of their review.*" (*Id.*) (emphasis added). *See, e.g.*, *Starman v. Kijakazi*, No. 2:20-CV-00035-SRC, 2021 WL 4459729, at *4 (E.D. Mo. Sept. 29, 2021) ("In articulating how they considered the supportability factor, ALJs may note…that the physician did not consider certain evidence, did not examine the claimant, or did not provide a detailed explanation for the opinion."). I find that the ALJ properly addressed the supportability of the state medical consultants' opinions.

In addition to supportability, Hicks argues that the ALJ failed to analyze whether the state agency opinions were consistent with the full medical record (ECF # 20 at 4). Hicks claims that later records show "significant and ongoing musculoskeletal impairments."[6] Despite Hicks's assertions, the ALJ articulated how she addressed the consistency factor. She found Drs. McCall and Cole's assessments were "consistent with the claimant's positive findings and clinical signs." (Tr. 511.) The ALJ cites specific evidence in the record where the findings

---

[6] Hicks cites the following evidence to support his position: orthopedic records from March 4, 2021, and April 7, 2021 document decreased triceps strength (3+/5), continued numbness and tingling in the left hand, and pain with shoulder ROM and ongoing cervical radiculopathy (Tr. 2044-45, 2018-20, 1929-31); MRI arthrogram from April 1, 2024, revealed a partial-thickness tear of the anterior rotator cuff and abnormal superior labrum (Tr. 359), which the consultants could not have reviewed; right shoulder deficits were documented as late as June 14, 2024, with positive O'Brien's and Speed's tests, pain with impingement, and limited ROM (Tr. 122); cervical MRIs in both 2020 and 2024 show worsening foraminal stenosis, posterior disc osteophyte complexes, and neural impingement—findings which contradict a light RFC (Tr. 323-33, 1152) (ECF # 20 at 4).

are consistent with the opinion that Hicks is capable of performing a reduced range of light work. (*see* Tr. 511 citing 1028, 1033-34, 1056, 1058, 1063, 1308, 1340, 1355, 1673, 1714, 1840, 2545, 2575, 2590, 2618, 2631.) These records include evidence of Hicks's treatment that occurred *after* Drs. McCall and Cole completed their consultative assessments. The ALJ was not required to discuss every piece of evidence that was submitted and considered in her decision. *See Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("Although required to develop the record fully and fairly, an ALJ is not required to discuss every piece of evidence submitted. An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered.") (internal citations omitted).

To support his arguments, Hicks cites medical records from treatment that he received in 2024. Although the ALJ issued her decision in 2023, it appears from the record that Hicks submitted new evidence to the Appeals Council. (*see* Tr. 1-491.) The Appeals Council is required to consider additional evidence submitted after the ALJ's decision if it is "(a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." *Whitney v. Astrue*, 668 F.3d 1004, 1006 (8th Cir. 2012) (citing 20 C.F.R. § 404.970(b)). "Evidence submitted to the Appeals Council is material when it relates to the claimant's condition for the time period for which benefits were denied, and not to after-acquired conditions or post-decision deterioration of a pre-existing condition." *Lucas v. Saul*, No. 2:18 CV 45

15

CDP, 2019 WL 4221519, at *2 (E.D. Mo. Sept. 5, 2019) (citation omitted). After reviewing the entire record, the Appeals Council denied Hicks's request for review and found no basis for changing the ALJ's decision. (Tr. 1.) Upon careful review of the additional evidence submitted from 2024, I find the ALJ's decision is still supported by substantial evidence in the record.

Hicks asserts that the ALJ improperly relied on outdated medical opinions in finding Drs. McCall and Cole's assessments persuasive (ECF # 20 at 417). He argues that because their opinions were rendered in mid and late 2020, they did not account for "over three years of significant ongoing medical developments." [7] The alleged onset date of Hicks's disability is September 1, 2019. Drs. McCall and Cole's assessments in mid and late 2020 were well within the relevant time period, and the ALJ discussed Hicks's treatment history leading up to her decision in 2023. *See, e.g.*, *White v. O'Malley*, No. 4:23-CV-539-ACL, 2024 WL 4202686, at *6-7 (E.D. Mo. Sept. 16, 2024) ("The fact that [the claimant] received additional treatment following the [medical consultants' opinions] does not invalidate their opinions or render their opinions unreliable."). Moreover, based on Hicks's diagnoses and treatment that occurred after the Drs. McCall and Cole's

---

[7] According to Hicks, the medical developments after 2020 included multiple surgeries, MRIs, steroid injections, orthopedic consultations, and persistent and progressive neurological findings such as radiculopathy, carpal tunnel syndrome, and cervical stenosis (ECF # 20 at 5). Notably, the ALJ could not have accounted for the steroid injections, MRIs, and any other treatment that Hicks received in 2024 because that treatment occurred after the ALJ's decision in 2023. (*see, e.g.*, Tr. 154, 214, 219.)

assessments, the ALJ determined that additional postural and environmental limitations to Hicks's RFC were appropriate.  (Tr. 508-511).  The ALJ noted:

> additional reaching, handling, and fingering limitations are included to accommodate the claimant's shoulder and recovery from his carpal tunnel surgery (listing exhibits).  Similarly, due to potential breathing difficulties related to his intermittent asthma, environmental limitations are warranted (listing exhibits).

(Tr. 511.)  The ALJ considered whether new evidence made Drs. McCall and Cole's opinions more or less persuasive and adjusted Hicks's RFC to accommodate his limitations.  *See* 20 C.F.R. § 404.1520c(c)(5).  I find that the ALJ did not improperly rely on outdated medical opinions in determining Hicks's RFC.

### The ALJ properly evaluated Hicks's credibility concerning his subjective complaints of pain and physical limitations.

Hicks argues that the ALJ's assessment of his credibility concerning his subjective complaints of pain and physical limitations was not supported by substantial evidence.

To the contrary, the ALJ described in detail Hicks's subjective complaints from his Function Reports and his testimony at the hearing.  (*see* Tr. 504-505.)  The ALJ discussed how Hicks's subjective complaints of pain were inconsistent with some of his daily activities and articulated how she considered the *Polaski* factors.  For example, the ALJ acknowledged Hicks's testimony during the hearing that "his mind races, he has a hard time focusing and he cannot concentrate."  (Tr. 504.)

17

The ALJ then noted, "[h]owever, he reported or testified he takes care of nine dogs, he completed lengthy function reports, he can follow written and spoken instructions… examination findings typically indicate [Hicks's] attention and concentration are normal and intact." (*Id.*)  Taking into account such inconsistencies, the ALJ determined that the record supports, at most, moderate limitations in this area.  (*Id.*)

When evaluating Hicks's other impairments, the ALJ considered Hicks's subjective complaints, his reports of his daily activities, his reports about whether medication was alleviating his symptoms, *and* objective medical evidence.  (*see* Tr. 503-509.)  The ALJ was not required to discuss every *Polaski* factor.  *See, e.g.*, *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) (finding the ALJ was not required to discuss "methodically each *Polaski* consideration, so long as he acknowledged and examined those considerations before discounting [claimant's] subjective complaints.").  Not only did the ALJ consider Hicks's subjective complaints, but the RFC was more limiting to accommodate them "to the greatest extent possible consistent with the objective evidence of record." (*see* Tr. 508, 509, 510, 511.)

### *The ALJ's RFC determination is supported by substantial evidence.*

Finally, Hicks argues that the ALJ's RFC determination is not supported by substantial evidence in the record (ECF # 20 at 7-12)  He asserts that the ALJ mischaracterized the record by relying on findings such as "full range of motion,"

"normal gait," and "intact sensation" to determine Hicks's RFC (*Id.* at 9).  He claims that the ALJ ignored the nature and extent of his treatment and that the ALJ was required to obtain additional medical source evidence to support the RFC (*Id.* at 7, 10).  I reviewed all of the evidence in the record and find that substantial evidence supports the ALJ's RFC determination that Hicks can perform a reduced range of light work.

On July 16, 2021, Hicks visited a neurosurgeon at the Mercy Clinic for Spine and Pain Management in St. Louis, MO.  He was treated by Dr. Bassam Hadi, MD.  Hicks reported experiencing back pain, neck pain, and left upper extremity pain, and he reported that he had trouble walking and difficulty with balancing.  Dr. Hadi noted that Hicks "had an MRI of the cervical spine which does show multilevel mild cervical spondylosis.  There is left C3-C4 osteophytic spur noted.  There is some degenerative disc disease at C5-C6.  EMG nerve conduction test did show minor irritation at C5-C6."  (Tr. 1775.)  Dr. Hadi's assessment was that "Hicks is suffering from spondylosis but without definite radiculopathy or myelopathy" and that he would "definitely treat this conservatively." (Tr. 1776.)  Dr. Hadi ordered physical therapy, chiropractic care, and pain management.  (*Id.*)

On February 16, 2022, Hicks visited the Mercy Clinic for Orthopedic Surgery and Sports Medicine in Jefferson, MO.  He was treated by Dr. Kenneth

Jeffrey Jenks, D.O., MS.  Dr. Jenks performed a left shoulder arthroscopy with labral repair on Hicks in October 2020.  Hicks reported experiencing pain in his left shoulder and neck.  Dr. Jenks noted that Hicks's "pain did not really seem to be coming from his shoulder and [Hicks] said the previous labral repair has improved and [he's] not having mechanical symptoms."  (Tr. 1756.)  Hicks reported that he had seen two spine surgeons who recommended nonsurgical intervention, and Dr. Jenks referred Hicks for physical therapy and pain management.  (Tr. 1752-1756.)  On August 16, 2023, Hick visited Dr. Jenks for an evaluation of his left hand following his left carpal tunnel release surgery.  He reported pain in his left hand while doing work and that he occasionally wears a brace.  (Tr. 554.)  Upon evaluation, Dr. Jenks found that Hicks's incision was well-healed with minimal soft tissue swelling and minimal pillar pain.  (Tr. 558.)  Dr. Jenks also noted "flexion extension of all fingers without deficit" and that Hicks's axillary nerve sensation was intact C5-C8.  (Tr. 558-559.)  His "forearm and arm compartments [were] soft and compressible. AIN, PIN function intact," and he was "moving all fingers."  (Tr. 559.)  Dr. Jenks recommended "progress[ing] back to activity as tolerated" and "discontinu[ing] brace" and ordered pain medication.  (*Id.*)

Additionally, Hicks's medical records consistently show that he presented with normal or improving range of motion in his lumbar spine, cervical spine, neck, knees, ankles, and hands, and that he had a steady gait.  (*see, e.g.*, Tr. 13, 21,

20

29, 38, 149, 288, 1056, 1063, 1623, 1871, 1904, 1905, 1988, 2073, 2450, 2618.) The ALJ acknowledged that some of Hicks's musculoskeletal impairments resulted in a reduced range of motion, warranting "a restriction to light work with additional postural and environmental limitations." (Tr. 508.)

In analyzing Hicks's mental impairments of bipolar disorder, major depressive disorder, anxiety, and history of ADHD, the ALJ determined that Hicks had limitations related to "concentration, focus, being around and getting along with others, [and] personal care." (Tr. 5019-510.) The ALJ's RFC limits Hicks to "simple, routine tasks with limited production expectations, changes in the work setting, and interactions." (Tr. 510.) In July 2020, Hicks was evaluated by Thomas Spencer, Psy.D., and Amie Mertz, L.P.C. (Tr. 1296.) They determined that Hicks has a mental disability which prevents him from engaging in employment or gainful activity. (Tr. 1299.) The ALJ found that their opinion was not persuasive because it was conclusory and inconsistent with Hicks's employment history and his medical record as a whole. (Tr. 510-511.) Their report stated that Hicks's mental illness "does not appear to have impacted his ability to get employment in the past." (Tr. 510, 1299.) Moreover, the ALJ found that although Hicks appeared to be "disheveled" and "older than his stated age" at his July 2023 psychiatric appointment, he was overall "alert, pleasant, cooperative, [and] engaged," and his memory and attention were found to be "grossly intact." (Tr. 509.)

Based on the complete record, I find the ALJ's decision finding Hicks not disabled is supported by substantial evidence.  The ALJ was not required to obtain additional medical source evidence.  *See Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995) ("An ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision.")

*D. Conclusion*

Because I find that the ALJ properly analyzed the supportability and consistency of medical opinions, considered Hicks's subjective complaints of pain, and the ALJ's RFC is supported by substantial evidence in the record, I will affirm the Commissioner's decision.

Accordingly,

**IT IS HEREBY ORDERED** that the final decision of the Commissioner of Social Security is affirmed.

A separate Judgment is entered herewith.

_____

RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 6th day of January, 2026.